obtaining the position in Philadelphia. He obtained that position at the direction of Nelson Conroe, who was the Director of Maintenance for US Airways and the division in which Mr. Locke worked. He applied for the position and was granted the position on November 5th. Under the last chance agreement, Mr. Locke just needed to complete certain pre-employment steps to get the position. At that point, he was ready to return to work and there would have been no issue with respect to completing the steps, and the reason for that is twofold. If we look at first the security screening, which seems to be a primary issue in this case, we did depose the individual in Philadelphia who had responsibility and knowledge with respect to the screening procedure. What he did say is there are two elements. First, US Airways would need to submit a form. Secondly, the people in Philadelphia would do a criminal background check. In this case, US Airways has consistently said that it did not interfere with the issuance of a security badge to Mr. Locke. So with respect to the submission of the form, there would have been no issue. Also with respect to Mr. Conroe, we indicated to Mr. Locke that you will get the badge. It's also undisputed that Mr. Locke has no criminal record. So there's no impediment whatsoever for Mr. Locke obtaining a security badge in Philadelphia. Now, he obtains the position on November 5th, on or about that same day there's the article which is published in the newspaper concerning Mr. Locke. He's not transferred to Philadelphia. On November 10, there's a telephonic meeting, again involving Mr. Conroe, who also was a participant as to the negotiation concerning the September 23 agreement. He tells Mr. Locke, well, you need to get your badge in Boston in three days, essentially knowing that's an impossibility. The Massachusetts State Police already issued a letter saying he's not going to get it. Of course, he can't get the badge on November 13. They terminate Mr. Locke, which I think clearly isn't appropriate because he was ready to go back to work. He had the position in Philadelphia. All the steps had been completed or if he'd been transferred, they simply would have been completed. He just needed to sign a form and that would have been it. If we look at the second ground, there's the allegation also that Mr. Basher, who is I believe the Director of Operations at U.S. Airways, was also interfering with respect to the issuance of a badge in Boston. With respect to Mr. Basher, the evidence is a little bit more difficult and the reason being there's nobody really that comes out and says, well, Mr. Basher, in fact, stopped the issuance of the badge. But in fact, what does happen is if you look at Major Concanon, who issued the letter on November 3rd, and I believe this is at page 266 of the appendix, he does say, look, U.S. Airways' position is relevant to my decision. Now, if you look at the email which was addressed to Mr. Basher's deposition, there was a conversation with him saying, is U.S. Airways in favor of returning this badge to Mr. Locke? The first question is, why is that conversation even occurring? If this is an independent decision by the Massachusetts State Police, there should be no conversation with Mr. Basher concerning that issue. Mr. Basher then says, OK, let's give him the badge back. Then there's a response by the Massachusetts State Police saying, well, that's a disturbing change in position, which means that U.S. Airways had to be saying, do not give him the badge back. Right after that, Mr. Basher says, OK, I changed my mind. I do not believe he should get the badge back. And then he says, I have to talk to you. I don't believe it's labor relations concerning that decision. So the first question is, why is that conversation even occurring? It should not be occurring. We know that the decision of Mr. Basher is a factor, major and canon, in connection with making his decision as to whether or not Mr. Locke should remain employed by USAF and obtain a security badge. Do you consider it inappropriate that the Port Authority might want to know information such as was known about Mr. Locke? So if they had asked Basher, what can you tell us about him? Has he had any incidents? Is Basher permitted not to be truthful? I would say no, Your Honor. But I asked Major Kincannon if he'd ever done any investigation as to Mr. Locke, and he said no. So my follow-up question is, if Basher would have been permitted to reveal the information, why can't he volunteer it? Well, Your Honor, I think there's two reasons. First of all, the last chance agreement says, Mr. Locke, you can go back to work. That is the agreement. Right. USAF cannot get in the way of that. So whatever Mr. Basher can say, if there's any issue as to facts, we don't know what those facts might be. I only have the email where they say, are you in favor of giving him the security badge? That is the question. But my concern here, I think, is a question of public policy. If Basher should not have, had he been asked by the Port Authority, if he should not have withheld the information in those circumstances, why should the company be held responsible for him volunteering the information? That's the part about that that troubles me. Okay. And respectfully, Your Honor, I'm not so sure I fully understand, but the first position is I don't think Mr. Basher has any right whatsoever to say that he's not in favor of Mr. Locke getting a badge. If they want to say, you know, does Mr. Locke work there? How long has he worked there? So why can't he? If he's an employee who has knowledge, let's go hypothetically, he has knowledge of a crime committed by somebody who has applied for a badge. Why can't he volunteer that? Well, in this case, he can't, Your Honor, because there's an agreement saying that Mr. Locke can go back to work. Essentially what we'd be saying is USA can sign an agreement saying, hey, look, sign up for this, apply for security screening, if it's okay, come back to work. And they're doing that knowing that someone from their organization can call Massport of the state police and say, don't give this guy a badge. I mean, I think those two scenarios are totally inconsistent. You cannot sign that agreement and then have somebody from USA say, don't give him a badge. I think what Mr. Basher needed to say is, was Basher a supervisor of Locke? He was a director of operations. I don't think he was an immediate supervisor. I think he was a supervisor as to Robert Andrews ran the maintenance department. So he is in the chain, the supervisory chain with respect to Locke? He is. I don't think he had any direct responsibility or knowledge as to Locke. I believe the only knowledge he obtained was perhaps through the arrest and talking to the state police. There's nothing that I see in the agreement that would have prevented Mr. Basher from, for example, if he believed that Locke had robbed a bank six months ago that he found about, you would hope he would tell Massport. And I don't see any suggestion in the agreement that he couldn't. Isn't your complaint, though, that it wasn't information that he conveyed, but it was simply he emailed Massport and said, hold off processing the badge? Well, that is true at the top of that email. And then they didn't issue the badge? That's correct. But he also says, I believe in the first sentence, I'm not in favor of giving the badge back to Mr. Locke. Right. So it gives his opinion. Are you complaining about any factual information that he gave? I'm not aware of any other factual information that he provided. I think it's his opinion that the badge should not be returned. And I don't think he had any right to make that comment in light of the agreement. I believe he should have said, look, Mr. Locke had a meeting. He signed this agreement. It says he's entitled to go back to work. We've reviewed the situation. We've had a meeting. That's the position of U.S.A. Okay. But then if the Port Authority said in follow-up, what's this meeting all about? What are the facts? And he should tell them that. And I think the state police actually stopped Mr. Locke. So I don't see any problem with that, because all the information comes from the state police. I mean, Major Kincaid should already have that information. And that's the only information that Mr. Basha can possess, because it all comes from the state police. That's what was addressed in the meeting. So I don't see how Mr. Basha can reveal any facts that would be detrimental to Mr. Locke. So your complaint is that they signed an agreement with your guy that says, we'll hire you back in return for you doing these things, which he agreed to. And the only condition was you honor our policies going forward. And secondly, you get security clearance. And so he said, okay, did the things. And then they contact the people who give the security clearance and say, don't give them the back. Well, I think that's true, Ron. I don't think he can sign an agreement saying, hey, all you've got to do is pass the security screening. Because what they're saying is when they sign the agreement, you know, this isn't going to stop you from getting through security. It wouldn't make any sense. And that's what they're saying. They're saying, here's the agreement. Essentially, USCIR is not going to object. That's why we're signing the agreement. Well, they couldn't warrant that he would get the clearance. They couldn't speak for the security officials. And I agree with that, Ron. Let me stop you there, Counsel, and ask the Chief Judge if she has any questions. Yes. In your brief, you open with the assertion that the agreement required the employer not to take any steps to interfere with his getting a security clearance. But the agreement does not, in fact, say any such thing. You're implying a term in it. I don't know if it's a fortune-type implication under the covenant of good faith and fair dealing. If it is, then there's a bit of a problem there because it's been redefined and limited. It also seems to me you have a but-for causation issue, which is to say the ultimate decision on whether to give him the clearance did not belong to the employer. So even if the employer had some obligation not to say anything about this or not to say anything harmful, what is the evidence you put on that inevitably, if Bashir had said nothing, he would have gotten the clearance back? You've just made the point that the state police already had a great deal of evidence of the theft, and while the employer might be willing to take the guy back, that doesn't mean the state police were willing to have him on the premises again. And I understand what you're saying, Your Honor. And that's why I'm saying, with respect to Major Kincannon, he also indicated he was speaking with Representatives Counsel for Massport, and everybody indicated that the position of U.S. Airways was important as to that decision. So it is somewhat difficult to find out what exactly they would have decided absent that input. And the bottom line is, there should have been no input from U.S. Airways saying that the badge really should or should not, well, I shouldn't say should, they should have said the agreement. Well, that's not quite so, because you have just conceded that if Mr. Bashir were asked for his input on this, that he would have to respond honestly. Well, Your Honor, I think I just What is the evidence that they never asked him anything? Well, I think he could answer questions about the incident. I did say that. I think if they asked him whether or not the badge should issue to Mr. Locke, he should say, this is the agreement, it was negotiated at a meeting, we were aware of all the facts, it was brought to us by the state police, and U.S. Airways really has no objection to returning the badge, because that is the spirit of the agreement. Well, it may be the spirit, but it certainly isn't written in the agreement. Okay, then, no more questions. Thank you. Thank you, Counsel. Good morning, Your Honors. Chris Campbell for U.S. Airways. Your Honors, this is a very straightforward case. To the extent that this last chance agreement is a contract provides Mr. Locke one limited remedy to consider whether or not he had met the terms of it. The terms are quite clear. He needs to get a security badge. The district court found that. It's supported in the record evidence. He didn't get the badge. The only evidence before this court and before the district court was that the decision made by Massport was made solely due to the security risk that a thief presented. Mr. Locke was caught red-handed coming off of a U.S. Airways plane with a bag full of  His badge was stripped by the Massachusetts State Police. Because we did not know the extent of his theft at the time, because we asked him. We asked what happened. He submitted a long and rambly statement about having his back hurt. He needed some beers to make it feel better. Nothing at all about the fact that he had soap dispensers, paper towels, sodas, coffee couladas, all of these different items that he had been pilfering. This surveillance was set up specifically because of information received by our security department that Mr. Locke was stealing. And they caught him stealing. This is not some agreement between equals as to let's figure out an equitable way that we can proceed. This was his only opportunity to keep his job other than being discharged immediately for theft. So what is the import of U.S. Airways signing the application for him to get a security badge? The only evidence in the record of U.S. Airways' position on the security badge is that they signed the application. This is a requirement. You need to sign an application. I couldn't go to Massport and ask for this badge because I'm not an employee. So an employer must sponsor. U.S. Airways did sponsor. There would be no question at all for the state police had U.S. Airways not sponsored Mr. Locke for the badge. So they agreed to sponsor him for the badge, but ultimately- I don't understand the- Forgive me. No, I understand what you're saying, but I don't understand the implication of signing it. Sure, they support- Sponsor is a loaded word for me. They sponsored him to have the badge. They said to the Massachusetts State Police, here's a candidate for a badge, please issue one. Mr. Basher had nothing to do with the application. He's not the badging agent. He's not Mr. Locke's supervisor or Mr. Locke's supervisor's supervisor. It's a completely different reporting structure. That's undisputed in the record. Mr. Basher is the station manager. As the station manager, he has responsibility for the station, including addressing reports of theft, and he had one. And so he sought the assistance of the Massachusetts State Police, and they caught Mr. Locke stealing. At that point in time, Mr. Basher has no further interaction whatsoever with Mr. Locke coming back. Well, but here's where I'm having trouble, is you said, and I agree with you, that your client had agreed to sponsor him to get the badge back. That's actually not quite written into the agreement, but I think it's a fair implied term of the agreement, that they were going to sponsor him. And they did. And they did. But then Basher has a communication, and Basher's a higher up. No, Your Honor. Mr. Basher has nothing to do with the application for the badge. That is solely through the badging office. The maintenance department of U.S. Airways is Mr. Andrews, is Mr. Locke's supervisor. Mr. Andrews' supervisor is Nelson Conroe, the director of maintenance. Well, let me put it this way. hear that your client is sponsoring the guy to get his badge back. The person they contact is Basher, and Basher gets back to them and says, hold off processing his badge until I have a chance to talk to our legal department on Monday. And that didn't happen, Your Honor. They didn't issue the badge. And that's where the line of communication stops. So why couldn't a jury say, hmm, the state police contact Basher, and Basher says, hold off processing the badge, and then there's no further instructions to do otherwise? To be clear, the individual who contacted Mr. Basher, they speak on a regular basis over security issues happening at Logan. He's not the individual who's issued the decision that Mr. Locke not receive a badge. He's simply saying, I understand he's seeking a badge. I thought that you folks weren't sponsoring. Mr. Basher says, I don't know. It's not my call. I'll check. Hold off. There's simply no record evidence, one, that the decision to process the badge was held off. In fact, it wasn't. It was denied. But more importantly, too, the testimony is uniform from each of the state police representatives, including Major Concanon, who issued the letter. And it indicates that U.S. Airways' input into the decision is minimal. The only input they have is that there's a decision to be made. Had U.S. Airways not sponsored the badge, which they did, and that's undisputed, there'd simply be no decision for the state police to make, Your Honor. Sure, but why can't a jury read the communications between Richard Lane, who's calling at the direction of Lieutenant Colonel Smith in MSP, to Basher? Why can't they read those e-mails, particularly the one of Sunday, November 1, as the state police pressing for whether they really were sponsoring him? And the final communication being, hold off processing the badge. The story stops. All we know then is they don't issue the badge. The jury could decide, well, they didn't want to issue it because of their own reasons, in which case you win. But a jury could decide that but for Basher telling them to hold off processing it, they would have granted it. Your Honor, for two reasons. First and foremost, it wasn't held off. The badge was sponsored. There is no evidence that the badge was not sponsored. There isn't a decision possible. Let me ask you this. After November 1 at 116 a.m., was there some further communication from your client withdrawing the direction from Basher that they should hold off processing the badge? He has no ability to direct. That's not my question. Was there a further communication that I'm missing? Yes, Your Honor. There was the original communication, which never changed. Let me ask the question again. Was there any communication between your clients? Does the record reflect any communication between your client and the state police regarding US Air's position on whether LOC should get a badge after Sunday, November 1 at 116 a.m.? Your Honor, temporarily, no. But the only communication is the original communication, which is the badging officer for US Airways signing the application, sponsoring the badge. Mr. Basher had no input into either the decision to sponsor or the decision to withdraw it. He doesn't have that authority. Well, you say that, and that's a good argument. But the guy calling it the direction of Lieutenant Colonel Smith, who himself is an official in the state police, seemed to think Basher was the guy who talked to. And Basher seemed to think that he had the authority to ask them to hold off processing the badge. And then the story comes to a halt. And it seems to me one of the reasons we have juries is to figure out what happened, to look at, see what Lane says, see what Basher says, and find out why the state police did it. But there's an inference here that they seemed to be interested in what Basher had to say. Your Honor, I would respectfully suggest that the undisputed and clear testimony from the actual representatives of the state police as to the decision made, and the clear testimony that Mr. Basher or US Airways input as to thumbs up or thumbs down, is simply not relevant. So there cannot be a jury finding on that point, Your Honor. More fundamentally, let's get back to what the contract is. This is a very limited right. The only entity that gets to determine whether or not Mr. Locke met the terms of the LCA is US Airways. And that couldn't be clearer in the actual contract. Well, let's take that then. So you're saying if they'd never sponsored him at all, but then they determined that was okay, and he was in breach of the agreement, we'd be stuck with that? I'd go then to perhaps Judge Lynch's point regarding the good faith that would be implied in a contract. I think it is more limited in Massachusetts jurisprudence, and that it wouldn't apply. But even hypothetically, if we didn't have the avalanche of cases that limit good faith and fair dealing cases to simply a discharge to deprive of future compensation, even setting that aside, if they simply refused to sponsor the badge, that would be, I would think, something that would be more important. But that's not the fact before us. But my question is, would we be stuck with their determination that it was okay not even to sponsor it in the first instance? Under the terms of this contract, if they made the decision not to sponsor this badge because they had determined that he had not met the terms of the LCA, they have every right to do that, Your Honor. It says it clearly there that their decision is final and binding. No, if they just said, we changed our mind, we're not doing it, we've determined that's a breach. You can answer. Thank you, Your Honor. I'm not sure if I understand what you're hypothetically considering U.S. Airways to determine a breach. If they determined that he had breached, had not met the terms, they certainly would be entitled not to sponsor the badge. That's clear that they have that sole authority to make this determination. This was the last desperate chance that Mr. Locke had to keep his job. Because we didn't have the facts and the evidentiary considerations of an arbitration months later for a union employee, the fact is they said we'll give him a last chance agreement rather than firing him on the spot for getting caught red-handed stealing. Let's take this time and ask Chief Judge Lynch if she has any questions. Yes, I do. In terms of the timing of the event, Bashir says, wait, let me clarify my employer's instructions through the legal department here. And then how long after that do the state police turn down the application? I believe that the letter from Major Conkannon is dated November the 3rd, 2009, denying the application. And it's worth noting that the record evidence indicates that that decision was based on the facts collected by the two state police officers that caught Mr. Locke on the night of September. So where in terms of the weekend is the decision made? Is it made first thing Monday morning? The decision by the state police. Your Honor, forgive me, the decision to strip him of the badge initially or the decision not to issue the badge? Not to issue the badge. Your Honor, I believe that the record evidence is that initially on October 16, the badge was denied. Let's be clear here. Mr. Locke applied on October 14 and October 16, and the record evidence includes his application with the stamp denied as of October 16. At that point, Mr. Locke sought to petition Massport to issue a different decision. And in the course of doing that, I believe the state police did contact Mr. Basher to ask his opinion. What's going on? The state police had already turned down his application. He asked for reconsideration. Basher doesn't enter the picture until they are reconsidering. Is that correct? That's what the record evidence indicates, Your Honor. Yes, that October 16, there's an application that's stamped denied. Okay. And then after Basher says, hold on, let me check. How long after that is there a communication from the state police saying we're not changing our mind and we're not issuing this? Your Honor, the letter from Major Concanon issuing an explanation for the denial is November 3, 2009. And when is the Basher conversation? Your Honor, it's not clear to me the date of the Basher conversation. I believe my brother had indicated it was November the 1st. Yes. Do you happen to know whether November the 1st is a Friday and November the 3rd is the following Monday? Your Honor, I apologize. I don't have a calendar in front of me.  No further questions. Thank you. Thank you, Counsel. Thank you.